Jerry LAKE,
Thelma J. Lake et al
*v.*
LANE COUNTY
(TC 3309)

Robert L. Ackerman, Springfield, represented petitioners.
Jack Levy, Springfield, represented respondent.
Decision for respondent rendered November 10, 1994.

## CARL N. BYERS, Judge.

Petitioners are property owners seeking a determination under ORS 305.583 of the effect of Article XI, section 11b, of the Oregon Constitution on a fee imposed by Lane County. Petitioners claim that the wastewater fee is a tax subject to the limitations of section 11b. The matter is before the court on cross motions for summary judgment.

The historical background for this matter began in 1972 with the adoption of a long-term plan for the Eugene-Springfield metropolitan area. At that time, the interested government entities recognized the need to address the issue of wastewater disposal. On February 9, 1977, the cities of Eugene and Springfield entered into an agreement with Lane County, establishing a Metropolitan Wastewater Management Commission (Wastewater Commission). The Wastewater Commission was to create and operate a regional sewerage facility. The new facility was to be financed by a combination of federal grants and general obligation bonds.

The three governmental units also created the Lane County Metropolitan Wastewater Service District (Service District). The Service District is a legal entity with authority under ORS Chapter 451 to sell general obligation bonds and impose a tax to repay the bonds. The Service District boundaries were coterminous with the boundaries of Springfield and Eugene.

On May 23, 1978, the voters within the district approved the sale of bonds in the amount of $29.5 million to finance the local share of the regional sewerage facility.

On March 15, 1978, the Service District leased the yet-to-be constructed facility to the Wastewater Commission for 30 years for $10 per year. The lease included an option to purchase the facility for $100. The Wastewater Commission was to purchase the existing sewer systems of Eugene and Springfield and incorporate those systems into the regional system.

One challenge facing the Wastewater Commission was the developed areas outside the cities, particularly the River Road/Santa Clara area of Lane County. The agreement establishing the Wastewater Commission recognized that

some users might be outside the service district boundaries. Because the bonds were to be repaid by a uniform district-wide tax, the agreement provided:

"If current users are outside the taxing boundaries of the County Service District, each shall pay, through a user charge or other method, amounts equivalent to that paid by properties within the taxing district for the regional sewerage system."

In 1980, a study of the River Road/Santa Clara area showed that nitrate levels and fecal coliform bacteria levels in the groundwater exceeded allowable limits. The study attributed these contaminates to the numerous septic systems in the area. Federal and state environmental agencies exerted their powers to have the area put on a schedule so that all properties in that area would be connected to sewers by the year 2000. This requirement was imposed as a condition of receipt of the grant money required to create the regional facility. The governmental units involved hoped the problem could be solved by voluntary annexations.

Annexations of the areas outside the Service District did not occur rapidly enough to comply with the schedule. As a result, in 1990, Eugene, Springfield and Lane County amended the metropolitan area general plan and extended the requirement for sewers to developed properties in the River Road/Santa Clara area without annexation. By 1991 some of the properties were connected to and used the sewer system. The Service District Lease Agreement provided that the Wastewater Commission shall:

"If service is to be provided outside the District boundaries, develop and implement a charge system to insure receipt of an equitable payment in lieu of bond retirement taxes. Any payments received by MWMC in lieu of taxes shall be paid to District for purposes of reducing the outstanding bond to the indebtedness."

In 1992, the Wastewater Commission contacted Lane County and asked it to impose a fee or tax upon those properties in the River Road/Santa Clara area which were connected to and using the regional sewage facility. Accordingly, on August 12, 1992, Lane County adopted Ordinance No. 8-92 imposing an "in lieu of bond retirement fee." The ordinance states:

"There is hereby imposed annually on each taxable property outside the District boundaries which is served by the regional sewerage facilities on July 1 of each year, a fee equal to the assessed value of the property multiplied by the tax rate applied to the property within the District for retirement of the LCMWSD bonds * * *."

## ISSUE

Is the "in lieu of bond retirement fee" a tax subject to the limitations of section 11b?

## ANALYSIS

■ Article XI, section 11b, of the Oregon Constitution limits the amount of taxes that may be imposed on property. Section 11b(2)(b) defines a tax as "any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements."

Respondent contends that the fee in question is an "incurred charge" which, by definition, is not "a tax" under section 11b. Section 11b(2)(c) defines incurred charges as follows:

"(c)   'Incurred charges' include and are specifically limited to those charges by government which can be controlled or avoided by the property owner.

"(i)   because the charges are based on the quantity of the goods or services used and the owner has direct control over the quantity; or

"(ii)   because the goods or services are provided only on the specific request of the property owner; or

"(iii)   because the goods or services are provided by the governmental unit only after the individual property owner has failed to meet routine obligations of ownership and such action is deemed necessary to enforce regulations pertaining to health or safety."

■ Respondent does not claim the fee in question is based on the quantity of the goods or services, or that the goods or services are provided only at the specific request of the property owner. Accordingly, the fee can be an incurred charge only if the services are provided by the governmental unit after the individual property owner fails to meet routine obligations of ownership.

Respondent contends that when property owners continue to flush their toilets, discharging fecal coliform into the groundwater via their septic systems, they fail to meet routine obligations of ownership. However, that is not the kind of "routine" obligation intended by the people.[1] The word "routine" suggests a common, ordinary or usual obligation. Examples of routine obligations would be the cutting of dry grass on a vacant lot to reduce fire hazard, trimming of trees and shrubs which impair vision or create traffic hazards, and removal of garbage and refuse which attracts rodents and increases potential for disease. If area groundwater is polluted by using properly functioning, government-approved septic systems, then it is not the owner's failure to meet a routine obligation. It may be the planners did not adequately account for the results of use of septic systems when they approved the development. Whatever the cause, assuming normal use of properly maintained septic systems, the contaminated groundwater is not a result of a property owner failing to meet routine obligations of ownership.

■ Petitioners point out that no individual property owners were charged with failure to perform their routine obligations. Requiring properties to be connected to the regional sewerage facilities and imposing the fee was an area-wide action. The wording of section 11b suggests that government must notify the property owner of the violation and give the owner an opportunity to correct the situation before imposing a charge.[2] The court agrees with petitioners that section 11b contemplates an individual approach to correcting a failure to meet routine obligations of ownership. For these reasons, the court concludes that the "in lieu of bond retirement fee" is not an incurred charge within the meaning of section 11b.

Respondent contends that, even if the fee is not an incurred charge, it is exempt from the limitations of section 11b by virtue of the bonded indebtedness exception. Article XI, section 11b(3), of the Oregon Constitution provides:

---

[1] Section 11b was enacted by an initiative measure adopted by the people of Oregon at the November 6, 1990, general election.

[2] The government action here was not based on an individual approach because the regional sewerage system was devised before section 11b was adopted and, therefore, the planners had not anticipated the section 11b limitations.

"The limitations of subsection (1) of this section apply to all taxes imposed on property or property ownership except

"(a) Taxes imposed to pay the principal and interest on bonded indebtedness authorized by a specific provision of this Constitution.

"(b) Taxes imposed to pay the principal and interest on bonded indebtedness incurred or to be incurred for capital construction or improvements, provided the bonds are offered as general obligations of the issuing governmental unit and provided further that either the bonds were issued not later than November 6, 1990, or the question of the issuance of the specific bonds has been approved by the electors of the issuing governmental unit."

The bonds in question are not authorized by a specific provision of the constitution. Therefore, if the fee is to qualify as an exception to section 11b(3), it must be under subparagraph (b).

Respondent contends it qualifies as an exception because the bonds were issued before November 6, 1990. Petitioners point out that, although the bonds were issued by the Service District, Lane County is the governmental unit imposing the fee.

■ The court finds that the subject fee comes within the bonded indebtedness exception. The "in lieu of bond retirement fee" is a tax on property; it is imposed to pay the principal and interest on bonded indebtedness; the bonds were general obligation bonds of the Service District, which is the issuing governmental unit; and the bonds were issued before November 6, 1990.

■ Section 11b(3)(b) does not require the governmental unit imposing the tax to be the same governmental unit that issued the bonds. This may be by design since municipal bonds are often long-term bonds. During the period a long-term bond is outstanding, one governmental unit may succeed another, taking over both the prior governmental unit's assets and liabilities. Nothing in the language of section 11b(3)(b) hinders such arrangements.

In view of the above, the court determines that Article XI, section 11b, of the Oregon Constitution does not affect

the "in lieu of bond retirement fee" imposed by respondent. Now, therefore,

IT IS ORDERED that Respondent's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Petitioners' Motion for Summary Judgment is denied.